UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RAJENDRA KOTHAPALLY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No. 2:24-cv-00741-MHH |
| } | |
| **UNITED STATES** } | |
| **DEPARTMENT OF** } | |
| **HOMELAND SECURITY,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rajendra Kothapally has sued the United States Department of Homeland Security for revoking his H-1B nonimmigrant "cap number" following DHS's revocation of his employer's H-1B nonimmigrant petition. (Doc. 24). DHS has filed a motion to dismiss Mr. Kothapally's complaint under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 26). This opinion resolves DHS's motion.

The opinion begins with Mr. Kothapally's allegations, as informed by documentation provided by DHS and referenced in Mr. Kothapally's complaint. Because DHS contests Mr. Kothapally's standing, the Court turns first to its ability to hear Mr. Kothapally's claim. Next, the Court outlines the standard governing review of a motion to dismiss under Rule 12(b)(6). Consistent with that standard,

1

the Court analyzes the parties' contentions concerning the legal sufficiency of Mr. Kothapally's complaint.

## I.

Mr. Kothapally is an Indian national. (Doc. 24, p. 11, ¶ 77). SS Lead Technology, Inc. recruited Mr. Kothapally for an information technology position in the United States. (Doc. 24, p. 11, ¶ 78).[1] SSLT extended Mr. Kothapally an employment offer and registered him for the H-1B nonimmigrant status lottery. (Doc. 24, p. 12, ¶ 80). DHS selected Mr. Kothapally for H-1B status. (Doc. 24, p. 12, ¶ 80).

After Mr. Kothapally's selection, SSLT submitted a Labor Condition Application on Mr. Kothapally's behalf to the Department of Labor. *See* § 1182(n)(1); (Doc. 24, p. 12, ¶ 81; Doc. 26-3, pp. 18–23).[2] The DOL approved SSLT's application, and SSLT filed Mr. Kothapally's H-1B petition. (Doc. 24, p. 12,

---

[1] The Immigration and Nationality Act allows foreign nationals to enter the United States via the H-1B program to "perform services" in a "specialty occupation" upon the "petition of [an] importing employer." 8 U.S.C. §§ 1101(a)(H)(i)(b), 1184(c)(1). The INA "caps" the number of H-1B nonimmigrant workers at 65,000 annually. § 1184(g)(1)(A)(vii). The statute permits an additional 20,000 H-1B workers who have "earned a master's or higher degree from a United States institution of higher education." § 1184(g)(5)(C). When demand for cap positions exceeds supply, DHS uses a lottery selection process. 8 C.F.R. § 214.2(h)(8)(iii)(A)(5)((ii). After DHS selects a worker and approves the employer's petition, DHS assigns the worker a "cap number." (Doc. 24, p. 8, ¶ 43).

[2] Among other requirements, an employer must identify on the LCA "the occupational classification" of a requested worker and attest on the LCA that the employer will pay the worker a mandated wage. § 1182(n)(1)(A), (D). The LCA also must list the worker's "place of employment," defined as "the worksite or physical location where the work actually is performed by the H-1B" nonimmigrant. 20 C.F.R. §§ 655.715, 655.730(c)(4)(v).

¶ 84; Doc. 26-3). DHS approved the petition and assigned Mr. Kothapally a "cap number." (*See* Doc. 24, pp. 8, 12, ¶¶ 43, 84; Doc. 26-4, p. 1).

Mr. Kothapally's H-1B petition listed his job title as "Azure Consultant" at an address in Melville, New York. (Doc. 26-3, pp. 4–5). Just before Mr. Kothapally entered the United States, SSLT reassigned him to work as a consultant for Truist Bank in Alabama. (Doc. 24, p. 12, ¶ 87). Mr. Kothapally entered the United States on December 14, 2022. (*See* Doc. 24, p. 12, ¶ 86).

On January 11, 2023, DHS, through U.S. Citizenship and Immigration Services, issued to SSLT a letter entitled "Notice of Intent to Revoke." (Doc. 26-2).[3] The letter concerned Mr. Kothapally's H-1B petition. (Doc. 26-2, p. 1). The letter states:

> SS Lead Technology Inc. made false attestations on the documents, provided false information, and submitted fraudulent evidence in support of the petition to appear to have a bona fide job offer and specialty occupation work at the claimed end-client location. This conclusion was met due to the fact that USCIS was not able to locate the end-client listed on your petition and the LCA. A site visit was conducted and it was found that your end-client was not located at the address provided on this petition, 200 Broad Hollow Rd. in Melville, NY. Also, it was found that many of the signatures on the aforementioned evidence were fictitious names and signatures on documents supporting various petitions. USCIS contacted the person listed as the HR Manager at your end-client (Career Connection Services, Inc.) Abby Benedict Rife, and she stated that she has never worked for that end-client nor did she sign any of the documents included with her name on them in this application. She further stated

---

[3] DHS regulations require notice to a petitioner before revoking an H-1B petition. 8 C.F.R. § 214.2(h)(11)(iii).

she was never aware of the company entitled Career Connection Services, Inc.

(Doc. 26-2, p. 4). USCIS sought to revoke Mr. Kothapally's H-1B petition because of SSLT's misrepresentations. (Doc. 26-2, pp. 4–7). USCIS provided SSLT 30 days to submit information in support of the petition. (Doc. 26-2, p. 7). Mr. Kothapally did not receive notice of USCIS's intent to revoke his H-1B petition. (Doc. 24, p. 13, ¶ 92).

After SSLT's window to submit additional information closed, SSLT submitted an "application or petition" concerning Mr. Kothapally. (Doc. 26-5).[4] On July 11, 2023, USCIS revoked Mr. Kothapally's H-1B petition. (Doc. 26-4, pp. 1, 7). By letter to SSLT, USCIS reiterated its concerns with Mr. Kothapally's H-1B petition and stated that it had revoked the petition because of SSLT's misrepresentations after SSLT did not submit additional evidence in support of Mr. Kothapally's petition. (Doc. 26-4, p. 7). SSLT informed Mr. Kothapally about the revocation and told him that he "could no longer work for them." (Doc. 24, p. 13, ¶ 93).

Enin Systems, Inc. accepted Mr. Kothapally for another position and agreed to sponsor his H-1B petition. (Doc. 24, p. 13, ¶ 94). Enin filed a transfer petition

---

[4] DHS represents that this information included "an H-1B amendment petition" that reflected "a new job location." (Doc. 26-1, p. 16 n.3). DHS has not provided a copy of the information SSLT submitted. Instead, DHS has provided a document which indicates that USCIS received the information SSLT submitted, but the document does not mention the substance of these materials. (Doc. 26-5).

on August 14, 2023. (Doc. 24, p. 13, ¶ 94). DHS approved Enin's petition, and Enin "assumed SSLT's contract with Truist Bank," allowing Mr. Kothapally to continue his work. (Doc. 24, p. 13, ¶ 95). On September 24, 2024, DHS issued a notice of intent to revoke letter to Enin. (Doc. 24, p. 14, ¶ 96). The letter indicated that Mr. Kothapally "did not have a cap number and could not move to a new employer." (Doc. 24, p. 14, ¶ 96).[5]

Mr. Kothapally has sued DHS for violating the Administrative Procedure Act. (Doc. 24, pp. 14–16, ¶¶ 98–111). Mr. Kothapally argues that DHS revoked his cap number improperly because of SSLT's actions, not his actions, and because DHS did not provide notice to him and an opportunity to respond before revocation. (Doc. 24, p. 15, ¶¶ 103, 105). Mr. Kothapally seeks a declaratory judgment that DHS cannot revoke a cap number for fraud absent misrepresentations by the foreign national beneficiary. (Doc. 24, p. 16). He asks DHS to withdraw his cap number revocation, provide him notice and an opportunity to respond, and reinstate his cap number during this interim period. (Doc. 24, p. 16).

---

[5] As discussed in this opinion, DHS based the revocation of Mr. Kothapally's cap number on 8 U.S.C. § 1184(g)(3), which provides:

> If an alien who was issued a visa or otherwise provided nonimmigrant status and counted against the [cap] is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact and such visa or nonimmigrant status is revoked, then one number shall be restored to the [cap].

§ 1184(g)(3).

## II.

A party may move to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1). Subject matter jurisdiction refers to a federal district court's ability to hear a particular case. "Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). The Constitution limits federal courts to hearing only "Cases" and "Controversies." U.S. CONST. art. III, § 2. A litigant's "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The standing doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 578 U.S. at 338 (citations omitted).

As the party invoking federal jurisdiction, Mr. Kothapally bears the burden of establishing his standing. *Kokkonen*, 511 U.S. at 377. To meet his burden, Mr. Kothapally must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citations

omitted); *see also City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1282 (11th Cir. 2019) (citation omitted).[6]

The parties' arguments concerning standing get to the issue at the heart of this dispute: whether, as a matter of statutory interpretation, DHS properly implemented the law governing cap number revocation. DHS argues that Mr. Kothapally's injuries trace back to SSLT's conduct, not USCIS's actions, and that DHS may

---

[6] Mr. Kothapally argues that DHS's revocation of his H-1B cap number constitutes an injury in fact, and DHS does not dispute Mr. Kothapally's position. (Doc. 30, pp. 19–30; Doc. 26-1, pp. 21–26; Doc. 31, pp. 6–8, ¶¶ 6–7). The Eleventh Circuit Court of Appeals has not decided whether USCIS's revocation of an individual's H-1B cap number constitutes an injury in fact, but the Eleventh Circuit has found that USCIS's revocation of an I-140 visa petition without notice constitutes an injury in fact because it deprives the immigrant of an opportunity to apply for adjustment of status. *See Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1260 (11th Cir. 2014) (per curiam).

Other appellate courts have found that the lack of notice to an immigrant about an agency's revocation of a petition constitutes an injury that is traceable to the agency itself. *See Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015); *see also Patel v. U.S. Citizenship & Immigr. Servs.* 732 F.3d 633, 637–38 (6th Cir. 2013). An unpublished panel of the Ninth Circuit has held that beneficiaries seeking equitable relief regarding agency denial of immigrant visas suffered an injury in fact. *Hsiao v. Scalia*, 821 Fed. Appx. 680, 683–84 (9th Cir. 2020) (finding that beneficiary "lost a significant opportunity to proceed in the three-step immigration process when the DOL denied the application that was filed on her behalf as the beneficiary").

While these decisions have involved immigrant beneficiaries rather than nonimmigrant beneficiaries, this distinction does not make a difference for standing purposes. *See, e.g.*, *Narambatla v. Dep't of Homeland Sec.*, No. 2:23-CV-01275, 2024 WL 1659025, at *4–*6 (W.D. Wash. Apr. 17, 2024).

Here, USCIS deprived Mr. Kothapally of his nonimmigrant status by revoking his H-1B cap number. By providing notice of its intent to revoke Mr. Kothapally's petition only to SSLT, USCIS denied Mr. Kothapally the opportunity to respond. Without lawful nonimmigrant status, Mr. Kothapally will lose his current job and his ability to remain in the United States. The revocation of Mr. Kothapally's H-1B status deprives him of the opportunity to seek permanent legal resident status through future petitions. *See Kurapati*, 775 F.3d at 1260. The Court follows the weight of authority and concludes that Mr. Kothapally has alleged sufficiently that he has suffered an injury in fact for the purposes of establishing his standing.

revoke an H-1B petition based on SSLT's conduct alone. (Doc. 26-1, pp. 21–26; Doc. 31, pp. 6–8, ¶¶ 6–7). As a result, DHS argues that because it revoked Mr. Kothapally's cap number in accordance with law following SSLT's misconduct, the Court cannot redress Mr. Kothapally's injury. (Doc. 26-1, pp. 24–26; Doc. 21, pp. 7–8, ¶ 7).

According to Mr. Kothapally, immigration law requires a nonimmigrant to act fraudulently before DHS may revoke the nonimmigrant's H-1B cap number. (*See* Doc. 30, pp. 19–30). He argues that his inaction, irrespective of SSLT's misconduct, precludes the revocation of his H-1B cap number and that his resulting injury is traceable to USCIS's conduct. (*See* Doc. 30, pp. 30–31). The Court may redress this alleged injury because the APA allows district courts to set aside agency decisions made in violation of law. (Doc. 30, pp. 31–32); *see* 5 U.S.C. § 706(2)(A) (stating district court may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law").

The Supreme Court has held that standing arguments touching on issues of statutory interpretation do not implicate a district court's subject matter jurisdiction. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–28 (2014); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946); other citations omitted) ("[T]he district court has jurisdiction if 'the right of the petitioners to recover under their complaint will

8

be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.'"); *see also Parcha v. Cuccinelli*, No. 4:20-CV-015-SDJ, 2020 WL 607103, at *3–*5 (E.D. Tex. Feb. 7, 2020). Because the parties' contentions implicate statutory construction, not subject matter jurisdiction, the Court will address the parties' arguments when analyzing DHS's Rule 12(b)(6) motion to dismiss for failure to state a claim.

As to redressability, here it is "'likely,' as opposed to merely 'speculative,' that [Mr. Kothapally's] injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quotation omitted). Mr. Kothapally's injury, the revocation of his H-1B cap number, would not have occurred but for DHS's actions. Mr. Kothapally contends that the APA allows judicial redress of his injury by setting aside DHS's revocation and directing the agency to provide him notice of its intent to revoke his H-1B cap number. *See* § 706(2)(A). Accordingly, Mr. Kothapally has standing to challenge DHS's revocation of his H-1B cap number at this stage of the proceedings. *Cf. Kurapati*, 775 F.3d at 1260 (citations omitted) (noting that USCIS's revocation of I-140 visa petitions caused plaintiffs' injuries and that "[i]f the district court were to conclude that the I-140 visa petition was unlawfully revoked because USCIS failed to comply with the

9

regulations, [the plaintiffs] would have the opportunity to challenge the denial of their petitions, and, thus, a favorable decision would redress the injury.").[7]

## III.

Rule 12(b)(6) allows a defendant to move for dismissal of claims for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[7] DHS urges the Court to follow the reasoning in *Atabekov v. U.S. Citizenship & Immigr. Servs.*, 717 F. Supp. 3d 850 (D. Neb. 2024). (Doc. 26-1, p. 24; Doc. 31, p. 6, ¶ 6). The Court does not find the district court's analysis in *Atabekov* persuasive. While USCIS revoked the *Atabekov* plaintiff's H-1B cap number, the revocation concerned circumstances different from those in this case, and the plaintiff raised different arguments concerning standing. 717 F. Supp. 3d at 857–61, 863–69. The *Atabekov* court did not consider *Lexmark* and *Steel Co.* in its analysis. *See Atabekov*, 717 F. Supp. 3d at 863–69. As explained in this opinion, *Lexmark* and *Steel Co.* control in these circumstances.

10

In deciding a Rule 12(b)(6) motion to dismiss, a court must view the allegations in a complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). A court must accept well-pleaded facts as true. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). In deciding a motion to dismiss, a court may consider a written instrument attached to the complaint as an exhibit "if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).[8]

"The admission to the United States of any [foreign national] as a nonimmigrant shall be for such time and under such circumstances as [DHS] may by regulations prescribe." § 1184(a)(1). DHS may revoke an H-1B petition following notice "to the petitioner" if the "statement of facts contained in the petition, H-1B registration (if applicable), the application for a temporary labor certification, or the labor condition application, was not true and correct, inaccurate, fraudulent, or misrepresented a material fact." 8 C.F.R. § 214.2(h)(11)(iii)(A)(2).

Here, DHS revoked Mr. Kothapally's H-1B petition in part because SSLT's "statement of facts contained in the petition or on the Labor Condition Application

---

[8] Mr. Kothapally's complaint refers to DHS's notice of its intent to revoke his H-1B petition and DHS's letter revoking his H-1B petition. (Doc. 24, p. 13, ¶¶ 91–92). DHS has attached these documents to its motion to dismiss. (Doc. 26-2; Doc. 26-4). The Court will consider these documents in addressing DHS's motion to dismiss for failure to state a claim. *See Maxcess*, 433 F.3d at 1340 n.3.

11

(LCA) was not true and correct, inaccurate, fraudulent, or misrepresented a material fact." (Doc. 26-4, pp. 8–9).[9] DHS revoked Mr. Kothapally's petition after it determined that Mr. Kothapally did not work for Career Connection Services at the end-client location listed on his LCA. (Doc. 26-4, p. 8). DHS found this misrepresentation willful and material because SSLT "provided false documentation to USCIS . . . to circumvent U.S. immigration laws." (Doc. 26-4, p. 9).

DHS argues that Mr. Kothapally has not stated a claim because DHS acted in accordance with law when revoking his H-1B petition and cap number. (Doc. 26-1, pp. 26–32; Doc. 31, pp. 1–5, ¶¶ 1–5). Mr. Kothapally responds that DHS violated 8 U.S.C. § 1184(g)(3) when revoking his cap number because of SSLT's misrepresentations, not his. (Doc. 30, pp. 20–30, 32–33). Section 1184(g)(3) provides:

> If [a foreign national] who was issued a visa or otherwise provided nonimmigrant status and counted against the [cap] is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact and such visa or nonimmigrant status is revoked, then one number shall be restored to the [cap].

---

[9] DHS also revoked Mr. Kothapally's H-1B petition because SSLT did not "demonstrate[] that [Mr. Kothapally's] proffered position [wa]s a specialty occupation," because SSLT "violated [the] requirement of section 101(a)(15)(H)" of the INA, and because SSLT "violated [the] terms and conditions of the approved petition." (Doc. 26-4, pp. 2–6); 8 C.F.R. § 214.2(h)(4)(iii)(A), (11)(iii)(A)(3), (11)(iii)(A)(4).

§ 1184(g)(3). According to Mr. Kothapally, § 1184(g)(3) required DHS to revoke his cap number only if DHS found that he committed fraud or willfully misrepresented a material fact. (Doc. 30, pp. 20–30, 32–33).

"Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). Statutory interpretation begins with determining whether "a 'statute's meaning is plain and unambiguous.'" *Org. of Pro. Aviculturists, Inc. v. U.S. Fish & Wildlife Serv.*, 130 F.4th 1307, 1314 (11th Cir. 2025) (quotation omitted). "In 'deciding whether the language is plain, [a court] must read the words "in their context and with a view to their place in the overall statutory scheme."'" *Aviculturists*, 130 F.4th at 1314 (quotation omitted).

On its face, § 1184(g)(3) does not constrain DHS's revocation of a cap number to instances in which the nonimmigrant commits fraud or materially misrepresents a material fact. The passive formulation of the statute with the phrases "who was issued" or "is found to have been issued" suggests that the statute applies to fraud by more than just the foreign national mentioned in the statute. Passive voice shifts the statute's structure such that the foreign national receives the action, in this case, a visa or nonimmigrant status procured by fraud or willful misrepresentation, rather than performing the action.

13

Reading § 1184(g)(3) in context, § 1184(a)(1) confers broad regulatory authority on DHS. § 1184(a)(1) ("The admission to the United States of any [foreign national] as a nonimmigrant shall be for such time and under such circumstances as [DHS] may by regulations prescribe."). DHS regulations allow for revocation of a H-1B petition, including revocation based on fraud or misrepresentation of a material fact in the petition or the LCA. *See* 8 C.F.R. § 214.2(h)(11)(iii)(A)(2). Because a nonimmigrant's employer prepares the petition and the LCA, DHS regulations, in conjunction with § 1184(g)(3)'s text, suggest that DHS's concerns about fraud and misrepresentation extend beyond the foreign national's conduct to encompass an employer's conduct.

Mr. Kothapally contends that another INA statutory provision suggests that the fraud and misrepresentation language in § 1184(g)(3) pertains only to the conduct of nonimmigrants. (Doc. 30, pp. 20–22). The other INA provision, 8 U.S.C. § 1182, states:

> Any [foreign national] who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter, is inadmissible.

§ 1182(a)(6)(C)(i). Reading § 1184(g)(3) to apply only to fraud or willful misrepresentation on the part of a nonimmigrant thus means that nonimmigrants face the consequences contemplated by § 1184(g)(3) on different terms than immigrants face consequences contemplated by § 1182(a)(6)(C)(i). However, unlike the text of

§ 1184(g)(3), § 1182(a)(6)(C)(i) ties the "fraud or willfully misrepresenting a material fact" language to the subject foreign national. Instead of using passive voice, § 1182 takes an active approach, employing the word "seeks." When a drafter uses active voice, the subject of the sentence, here, the foreign national, performs the action, here, seeking to procure a visa or other documentation "by fraud or willfully misrepresenting a material fact."[10] Moreover, § 1182 demonstrates that Congress knows how to limit a statute's scope to foreign nationals' acts when Congress wishes to restrict a provision's application. *See Food & Drug Admin. v. R.J. Reynolds Vapor Co.*, 606 U.S. ___, 145 S. Ct. 1984, 1995 (2025) (stating that Congress "knows how to limit the scope of a cause of action" when it does so elsewhere in a statute).

---

[10] Mr. Kothapally also suggests that § 1184(g)(3)'s usage of "issued a visa" and "otherwise provided nonimmigrant status" refers to 8 U.S.C. §§ 1201(a)(2) and 1258(a), respectively. (Doc. 30, pp. 20–21). The first section, § 1201(a)(2), indicates that DHS issues visas to nonimmigrants. But under the H-1B program, the issuance of a visa requires the employer's participation through the LCA and petition process, not just the immigrant's application for a visa; nonimmigrant status depends in part on the employer's conduct. Moreover, § 1258(a) does not refer specifically to "otherwise provided nonimmigrant status." *See* § 1258(a). In the context of H-1B nonimmigrants, that these terms appear to refer to INA provisions pertaining only to nonimmigrants does not change the interpretation of § 1184(g)(3) in this opinion.

In addition, though an employer's interest in an H-1B petition differs from a nonimmigrant's interest in their cap number, the language of § 1184(g)(3), which ties the two together, suggests that this difference does not make a difference concerning the applicability of § 1184(g)(3). This reading remains consistent with another provision in the INA. *See* 8 U.S.C. § 1184(c)(1) (tying admission of a nonimmigrant to the "petition of the importing employer"). Elsewhere, DHS regulations have disclaimed a nonimmigrant's rights concerning challenges to their petition. *See* 8 C.F.R. § 103.2(a)(3) (specifying that "beneficiary of a petition is not a recognized party in" proceeding concerning adjudication of benefit request); § 103.3(a)(1)(iii) (noting "affected party . . . does not include the beneficiary of a visa petition").

15

Despite the passive construction of § 1184(g)(3), the statute shares some similarities with § 1182(a)(6)(C)(i). Both § 1182(a)(6)(C)(i) and § 1184(g)(3) specifically mention only foreign nationals. Neither statute mentions "petitioners," the term DHS regulations use to refer to employers. *See, e.g.*, 8 C.F.R. § 214.2(h)(11). And § 1184(g)(3) uses the active construction of "willfully misrepresenting" included in § 1182(a)(6)(C)(i). Unlike § 1182(a)(6)(C)(i), § 1184(g)(3) does not list a subject to which the "fraud or willfully misrepresenting a material fact" language applies. Thus, the active use of "willfully misrepresenting" in § 1184(g)(3) ordinarily would refer to the subject of the sentence, the foreign national, suggesting that the cap number revocation in § 1184(g)(3) follows from the foreign national's conduct.

Yet § 1183(g)(3)'s use of both passive and active voice and lack of an express subject acting fraudulently or making willful misrepresentations does not render § 1184(g)(3) ambiguous. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("The statute is awkward, and even ungrammatical; but that does not make it ambiguous on the point at issue."); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249 (1989) ("RICO may be a poorly drafted statute; but rewriting it is a job for Congress, if it is so inclined, and not for this Court."). True, § 1184(g)(3) makes no mention of "petitioners." But the statute implicitly refers to another party not mentioned; the passive language of "is revoked" refers to DHS as a subject. And the statute's use

16

of passive voice means that the foreign national receives an action, a visa or nonimmigrant status, rather than performing the action.

Accordingly, § 1183(g)(3) unambiguously applies not only when a nonimmigrant acts fraudulently to procure a visa or nonimmigrant status, but also when a nonimmigrant receives a visa or nonimmigrant status based on the fraudulent acts of a third party.

Other district courts have interpreted the scope of § 1184(g)(3) similarly. *See, e.g.*, *Narambatla v. U.S. Dep't of Homeland Sec.*, No. 2:23-cv-01275-JHC, 2025 WL 754530, at *4–*5 (W.D. Wash. Mar. 10, 2025); *Manney v. U.S. Dep't of Homeland Sec.*, 735 F. Supp. 3d 590, 600–01 (E.D. Pa. 2024); *Parcha*, 2020 WL 607103 at *9–*10. Following the weight of this authority and the plain language of § 1184(g)(3), the Court adopts DHS's interpretation of the statute.

DHS's reading of § 1184(g)(3) appears at odds with other DHS policies and procedures. Section § 1184(g)(3) contradicts the flexibility provided to nonimmigrants elsewhere in DHS regulations. For example, 8 C.F.R. § 214.1(l)(2), provides that H-1B nonimmigrants "shall not be considered to have failed to maintain nonimmigrant status solely on the basis of a cessation of the employment on which the [foreign national]'s classification was based, for up to 60 consecutive

17

days. . . ." 8 C.F.R. § 214.1(l)(2).[11] The 60-day grace period allows an H-1B nonimmigrant to retain his cap number when a third party's actions effect his status to allow the nonimmigrant time to address the matter.

As Mr. Kothapally points out, in the context of DHS implementation of the INA's adjustment of status provision, 8 U.S.C. § 1255, the USCIS Policy Manual contemplates that ineligibility for status adjustment excepts circumstances when a nonimmigrant violates the INA "through no fault of his" own. *See* U.S. CITIZENSHIP & IMMIGR. SERVS., POLICY MANUAL, Vol. 7, Part B, Ch. 4, https://www.uscis.gov/policy-manual/volume-7-part-b-chapter-4 (last visited June 18, 2025). Legal interpretations in agency manuals "lack the force of law," *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (citations omitted), but this section of the USCIS Policy Manual lends persuasive support to Mr. Kothapally's position.

Yet, "[n]o matter how compelling" the Court finds Mr. Kothapally's arguments, it is bound to "apply the 'plain and unambiguous statutory language according to its terms.'" *Est. of Jones v. Live Well Fin., Inc*., 902 F.3d 1337, 1342 (11th Cir. 2018) (quoting *Hardt v. Reliance Standard Life Ins. Co*., 560 U.S. 242, 251 (2010)). The text of §1183(g)(3) preempts Mr. Kothapally's APA challenge to

---

[11] "DHS may eliminate or shorten this 60-day period as a matter of discretion." 8 C.F.R. § 214.1(l)(2).

the grounds for DHS's revocation; his argument may have rested on stronger footing if he had expressly challenged DHS's revocation of his H1-B cap number on procedural due process grounds.[12]

## IV.

Accordingly, the Court grants DHS's motion to dismiss Mr. Kothapally's APA claim. If Mr. Kothapally wishes to amend his complaint, he must file a motion to do so within 14 days of this order. The Clerk of Court shall please TERM Doc. 25.

**DONE** and **ORDERED** this September 30, 2025.

*/s/ Madeline H. Haikala*
_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[12] Foreign nationals, even those "whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *See Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted). In his amended complaint, Mr. Kothapally has alleged facts and included case law relevant to a procedural due process claim, (Doc. 24), but he has not expressly alleged a constitutional violation under the Fifth Amendment.